UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                                CRIM. CASE NO. 24-20040
v.                                   HON. SHALINA D. KUMAR

KEVIN SMITH,

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

Beginning in or around September 1987 and continuing for over three decades, through August 2021, Defendant Kevin Smith defrauded the Social Security Administration (SSA) by collecting Childhood Disability Benefits (CDB) while intentionally concealing his *six* marriages from the SSA in order to remain eligible for and continue receiving those benefits. Smith's conduct resulted in a total loss to the government of $258,488.20.

On March 27, 2025, Defendant Smith pleaded guilty to one count of Theft of Government Funds (18 U.S.C. § 641) pursuant to a Rule 11 Plea Agreement; he is now scheduled to appear for sentencing at 12:00 p.m. on July 29, 2025. As discussed below, the Government respectfully recommends a downward departure

pursuant to United States Sentencing Guideline (USSG) § 4A1.3(b), and a custodial sentence at or near the bottom of the resulting guideline range.

## I. Introduction

The United States adopts the timeline of relevant case events, the description of the charge to which Defendant Smith has pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the Presentence Investigation Report (PSR) dated May 22, 2025.

## II. Calculation of Advisory Sentencing Guidelines

The Probation Department calculated the defendant's sentencing guideline range as 41 to 51 months, based on a total offense level of 15 and a Criminal History Category of VI. (PSR ¶ 83.) This matches the Government's estimate; accordingly, the Government accepts the guidelines calculated by the Probation Department as correct.

However, as set forth in the Rule 11 Plea Agreement, the parties believe that Smith's criminal history overstates his likelihood of recidivism. (*See* ECF No. 28, PageID.84.) The parties therefore recommend a downward departure under USSG § 4A1.3(b) by reducing the defendant's criminal history category from VI to IV. (*Id*.) This would, in turn, reduce the defendant's sentencing exposure from the current estimate of 41 to 51 months under criminal history category VI to 30 to 37 months under criminal history category IV. The Government believes that a

2

custodial sentence at or near the bottom of this reduced guideline range is warranted in this case, for the reasons discussed below.

## III. The Relevant § 3553 Factors

The task of a court at sentencing is to impose a sentence upon a defendant that is, "'sufficient, but not greater than necessary to comply with the purposes,' of section 3553(a)(2)." *United States v. Wilms*, 495 F.3d 277, 281 (6th Cir. 2007) (*quoting United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

### (1) Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The Court must consider, in fashioning a sentence, the nature and circumstances of the offense and the history and characteristics of a defendant. 18 U.S.C. § 3553(a)(1).

Defendant Smith comes before the Court at the age of 66, with some health problems of varying severity. He has an extensive criminal history spanning almost four decades, from 1976 to 2014; it consists of numerous convictions for a variety of offenses (*e.g.*, armed robbery, drug trafficking, possession), for which Smith received both custodial and/or probationary sentences. Notably, Smith committed many of his crimes while simultaneously committing the one currently before the Court, and while under court supervision for previous convictions. The Government acknowledges that Smith's age and health could be seen to weigh in

favor of leniency. However, his criminal history and other factors suggest that a custodial sentence of some length is nevertheless appropriate, hence the recommendation for a sentence at or near the bottom of the guideline range.

First and foremost is the active and intentional nature of Smith's fraudulent scheme. As a recipient of Childhood Disability Benefits, Smith was obligated to notify the SSA if and when he married. Smith was aware of this reporting obligation, and he knew that his eligibility for benefits would cease upon marriage. Smith married *six* times over the course of the past 40 years:

- J.R.S.: September 14, 1987 to July 10, 1989
- N.D.S.: November 14, 1989 to June 27, 1994
- K.J.: January 2, 1997 to September 18, 1998
- E.J.S.: December 24, 1998 to May 12, 2009
- J.L.: December 1, 2009 to July 25, 2016; and
- L.B.: June 29, 2018 to August 3, 2020.

Yet, he failed to report any of his marriages to the SSA. Not only did he fail to report, but he lied to the SSA and its agents about his marital status on multiple occasions. For example, in June 1998, during a consultative examination regarding Smith's continued eligibility for benefits, Smith reported that he was single and never married. In fact, he was married to K.J. at the time, and he had been married twice before. In 2013, as part of another review regarding his benefits, Smith submitted a Continuing Disability Review Report to the SSA on which he listed his wife, J.L., as an alternative contact. However, he purposefully

4

listed her as his "friend," not as his wife. As part of that SSA review process, Smith attended another consultative examination in February 2014. Again, he told the examiner that he had never been married. And in February 2021, Smith lied to the SSA about his marriages again on a questionnaire. Specifically, one of the questions asked, "Have you ever been married?" Smith circled "No" and signed his name under the penalty of perjury. Smith finally admitted to his marriages when questioned by SSA-OIG agents in July 2021.

Another factor is the sheer scope of this fraud. Smith fraudulently collected Childhood Disability Benefits month after month, year after year, and *decade after decade*, for 34 years. Smith knew that he was not entitled to the SSA money, but he repeatedly made the deliberate choice to steal from the government on a monthly basis for three and a half decades, converting over 400 separate monthly benefit payments to his own personal use. This resulted in the second largest SSA fraud loss prosecuted in this District in over five years.

Smith's conduct was not a passive crime or a momentary lapse in judgment, but rather a series of intentional choices – hundreds and hundreds of choices. Smith made a deliberate choice to blatantly lie to the SSA on multiple occasions in order to continue receiving Social Security disability benefits to which he knew he was not entitled. He continued to collect those benefits month after month, year after year, for over three decades. He could have stopped of his own volition at

5

any time, but he chose not to. The nature of Smith's conduct warrants the imposition of a custodial sentence of some length.

### (2) Seriousness of the Offense, Respect for the Law, And Just Punishment

The second factor requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A).

The Government believes that the defendant's crime – concealing and lying to the government about one's marital status for years in order to maintain one's eligibility for government benefits – is a serious offense. Offenses such as this negatively affect the public's perception of social welfare programs; specifically, these crimes erode confidence in the Social Security Administration and its ability to safeguard taxpayer contributions.

Moreover, it is important to understand that this is not a "victimless" crime. Theft from the government is theft from the taxpayers that fund the government. Taking money from the Social Security Administration is an affront against every hardworking individual who pays into the system in hopes that it will still be there to support them in their retirement or the event of a disability. As the Court is likely aware, the Social Security system is in jeopardy and conduct such as that of the defendant puts the system at even greater risk of insolvency. Now more than

ever, program integrity is a topic of significant concern amongst lawmakers, highlighting the need for those who steal from the government to be held accountable.

Furthermore, while it is true that the defendant will have to make restitution, it is important to remember that restitution is mandatory in the case of <u>all</u> financial offenses. Federal benefits fraud is a real crime that should be met with more than merely a financial consequence, even where the financial consequence may be significant. Simply having to pay the money back would <u>not</u> be a "just punishment," but rather a concession that this defendant – for all practical purposes – is entitled to demand a long-term, interest-free loan from his fellow citizens, which may never be repaid in full.

**(3)  Need to Afford Adequate Deterrence & Protect the Public**

The sentence imposed must also, "afford adequate deterrence to criminal conduct and […] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C).

The United States acknowledges that some of the defendant's previous convictions are remote in time and overstate the likelihood that he will commit additional crimes. Hence, the recommendation for a downward departure. Nevertheless, the custodial and probationary sentences that the defendant served for those, and subsequent, crimes clearly did not deter him from simultaneously

7

committing the instant offense over the course of *three decades*. Thus, the Government submits that the need for specific deterrence remains and warrants a custodial sentence of some length.

The sentence imposed in this case should also serve to deter others who seek to profit by stealing from the government. Thousands and thousands of people receive benefits from the SSA and its programs, making the agency an attractive target for fraud and malfeasance. Whatever sentence the Court imposes needs to be sufficient to dissuade the public from engaging in misconduct akin to that of the defendant and send a message to other would-be thieves that there are significant consequences for defrauding the Social Security Administration.

### (4) Effective Training and Treatment

Additionally, the sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The Government believes that the Bureau of Prisons is fully capable of treating the defendant's health issues during any term of incarceration. Additionally, the Government would encourage the Court to impose the special conditions for mental health treatment suggested by the Probation Department in ¶ 107 of the PSR during any term of supervision.

**(5)  Kinds of Sentences Available and Sentencing Range**

The Court must also consider, "the kinds of sentences available …[and] the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing] guidelines." 18 U.S.C. §§ 3553(a)(3), 3553(a)(4)(A).

The defendant's offense is a Class C felony and calculation of the sentencing guidelines places him in Zone D of the sentencing table. Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range "shall be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1(f). As stated previously, the Government believes that a custodial sentence at or near the bottom of the guideline range, as adjusted by the agreed-upon downward departure, is appropriate in this case.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct**

According to the Judiciary Sentencing Information Network (JSIN), with regard to the guidelines as calculated by the Probation Department:

> During the last five fiscal years (FY2020-2024), there were 30 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 15 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 30 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 39 month(s) and the median length of imprisonment imposed was 41 month(s).

9

(https://jsin.ussc.gov/analytics/saw.dll?Dashboard, last visited July 22, 2025).

Should the Court accept the parties' recommendation for a downward departure to a Criminal History Category of IV, JSIN provides:

> During the last five fiscal years (FY2020-2024), there were 30 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 15 and a Criminal History Category of IV, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 29 defendants (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 26 month(s) and the median length of imprisonment imposed was 30 month(s).

(*Id.*).

The custodial sentence recommended by the Government comports with the JSIN information above and would *not* result in an unwarranted sentencing disparity.

### (7) Restitution, Fines, and Forfeiture

Finally, a court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses. 18 U.S.C. § 3553(a)(7).

The defendant's crime caused a financial loss to the government; thus, the United States seeks imposition of a mandatory restitution order under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, in the amount of $258,488.20 to the Social Security Administration. In addition to ordering

restitution, the Government would ask the Court to adopt the special conditions suggested by the Probation Department in ¶ 113 of the PSR.

## IV.  Conclusion

Having considered the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully recommends a sentence at the bottom of the guideline range.  Ultimately, the Government asks the Court to impose whatever reasonable sentence it determines to be sufficient but not greater than necessary to comply with the purposes stated in 18 U.S.C. § 3553.

The United States further asks the Court to require the defendant to pay the mandatory $100.00 special assessment to the Clerk of the Court, and order the defendant to pay restitution in the full amount of $258,488.20 to the Social Security Administration.

    Respectfully Submitted,

    JEROME F. GORGON JR
    United States Attorney

    *s/Corinne M. Lambert*
    CORINNE M. LAMBERT
    Special Assistant U.S. Attorney
    211 W. Fort Street, Suite 2001
    Detroit, Michigan 48226
    (313) 226-9129
    Corinne.Lambert@usdoj.gov

Date: July 22, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2025, I filed the foregoing electronically via the CM/ECF system, which will send notification of such filing to counsel of record:

Kimberly W. Stout
Attorney for Defendant
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
(248) 258-3181
wadesmom1@aol.com

A copy was also provided to United States Probation Officer Anthony F. Pilara via email.

*s/Corinne M. Lambert*
CORINNE M. LAMBERT